IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GABRIEL F. NAGY, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 09-3995 |
| HARRIS M. DEWESE, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

YOHN, J.                                                          February 23, 2011

Plaintiff, Gabriel F. Nagy, seeks to recover the assets of the Compass Capital Partners

Ltd. Defined Benefit Retirement Plan (the "Plan"). Plaintiff contends that the Plan's assets were

misappropriated by defendants Harris M. DeWese ("DeWese"), the Plan administrator, and

Compass Capital Partners, Ltd. ("Compass"), the Plan's sponsor, and that Morgan Stanley Smith

Barney LLC ("Smith Barney") facilitated their misappropriation. Plaintiff asserts claims for

breach of fiduciary duties under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 *et seq.*, and state law.

Plaintiff and defendant Smith Barney have now filed cross-motions for summary

judgment under Federal Rule of Civil Procedure 56. Plaintiff seeks summary judgment against

all defendants for breach of fiduciary duty under ERISA (Count I), and against Smith Barney for

breach of fiduciary duty under state law (Count III). Smith Barney seeks summary judgment as to

all of plaintiff's claims against Smith Barney.

Because the evidence shows that the sole genuine issue of material fact with respect to

plaintiff's claim in Count I against DeWese for breach of fiduciary duty under section 502(a)(2) of ERISA is the amount of damages, I will grant plaintiff's motion for summary judgment as to liability on that claim. However, plaintiff has not demonstrated—or even argued—Compass's liability under Count I, so plaintiff's motion for summary judgment will be denied as to Compass. Plaintiff has also provided no argument with respect to his claim for equitable relief in Count II, so I will not consider that claim.

Although the undisputed evidence shows that Smith Barney was a fiduciary with respect to providing investment advice to the Plan for a fee, it also establishes that Smith Barney did not act as a fiduciary when engaged in the conduct subject to complaint, and therefore did not directly violate its fiduciary duties under ERISA. Smith Barney is thus entitled to summary judgment on plaintiff's claim in Count I to the extent plaintiff seeks to recover for direct breach of fiduciary duty. However, neither Smith Barney nor plaintiff is entitled to summary judgment on plaintiff's claim in Count I that Smith Barney is liable as a co-fiduciary under section 405 of ERISA, because genuine issues of triable fact remain to be decided as to that claim.

Finally, because Smith Barney was an ERISA fiduciary with respect to the Plan, Plaintiff's state-law claim in Count III for breach of fiduciary duty against Smith Barney is preempted.

I.      **Factual and Procedural Background**[1]

DeWese and plaintiff purchased Compass around January 1998. (Pl.'s Mot. Summ. J.

---

[1]I view the facts in the light most favorable to the non-movant in analyzing both plaintiff's and Smith Barney's motion for summary judgment. Except as otherwise noted, the facts set forth herein are undisputed.

("Pl.'s Mot.") ¶ 2; Smith Barney's Resp. to Pl.'s Mot. Summ. J. ("Smith Barney Resp.") ¶ 2.) Plaintiff owned 40% of the voting stock of Compass and was its president and chief operating officer until his resignation on November 30, 2003. (Pl.'s Mot. ¶¶ 4, 16.) DeWese owned the remaining 60% of Compass's voting stock and was its chairman and chief executive officer. (*Id.* ¶ 3.) DeWese provided merger and acquisition investment-banking advice to Compass's clients, specializing in the printing industry. (*Id.* ¶ 5.) Plaintiff managed the day-to-day affairs of Compass and provided business valuation services to its clients. (*Id.* ¶ 6.)

The Plan was formed on January 1, 1998, and was a defined benefit plan that provided retirement benefits to participants at age 62. (*Id.* ¶¶ 7-8; DeWese/Compass Resp. to Pl.'s Mot. Summ. J. ("DeWese Resp.") ¶ 7.) DeWese, plaintiff, and three other Compass employees were all participants in the Plan, but DeWese has renounced any interest in the Plan. (Pl.'s Mot. ¶¶ 11-12.) Plaintiff served as the Plan's administrator until his resignation as trustee on February 13, 2003. (*Id.* ¶ 9.)

After plaintiff's resignation as trustee and administrator, DeWese assumed both roles with respect to the Plan. (*Id.* ¶¶ 10, Pl.'s Mot. Ex. A ("DeWese Dep.") 95:25-96:2.) After becoming the administrator and trustee of the Plan, DeWese moved the Plan's assets to an account at Legg Mason Wood Walker, Inc., where his son Andrew DeWese was a trainee, and Smith Barney came to hold the Plan's assets as successor to Legg Mason Wood Walker. (Pl.'s Mot. ¶ 14; Smith Barney's Mot. Summ. J. ("Smith Barney Mot.") 1.)

John Jason Bish ("Bish"), a Smith Barney employee, was at all relevant times assigned to the Plan's account, and Smith Barney characterizes his role as that of "financial advisor" to the account. (Smith Barney's Statement of Undisputed Facts ¶ 8.) In that capacity Bish

recommended securities for the Plan to buy and sell, and DeWese always accepted those recommendations. (*Id.* ¶ 14; Smith Barney Resp. ¶ 31.)

Plaintiff decided to retire in late 2003, and on October 6, 2003, DeWese accepted plaintiff's retirement proposal pursuant to which plaintiff resigned as an officer and director of Compass and transferred his shares in Compass back to the company. (Pl.'s Mot. ¶ 16.) Plaintiff claims to have performed part-time work as a consultant for Compass from time to time thereafter. (*Id.* ¶ 17.)

In February 2005, plaintiff elected to receive retirement benefits from the Plan in the form of a stream of monthly payments of $2,111.07 to continue until the later of his death or the death of his wife. (*Id.* ¶ 22.) DeWese then instructed Smith Barney to send a monthly payment to plaintiff for that amount. (*Id.* ¶ 23.) Until December 2007, these payments were made on schedule. (*Id.* ¶ 63.)

In April 2005 DeWese acquired stock in a Tampa, Florida-based company known as Hillsboro Printing ("Hillsboro"), in lieu of cash payment for investment-banking services he provided to Hillsboro. (*Id.* ¶ 33.) The following year DeWese purchased additional shares of Hillsboro stock, bringing his total share in that company to at least 40%. (*Id.* ¶ 34.)

Hillsboro was experiencing financial difficulties, and was unsuccessful in its attempts to borrow money from banks in Florida.[2] (*Id.* ¶¶ 35-36; Smith Barney Resp. ¶ 36.) In order to allow Hillsboro to weather its cash-flow problems, DeWese lent the company approximately $800,000,

---

[2]DeWese admits that he was aware that Hillsboro had significant financial problems and was unable to secure bank financing, but claims that the full extent of Hillsboro's financial problems were hidden from him. (DeWese Resp. ¶¶ 35-36; DeWese Dep. 21:19-20.) I assume that to be the case for purposes of this decision.

using both his personal funds and funds from the Plan. (Pl.'s Mot. ¶¶ 37-38.)

DeWese accessed the Plan's funds by requesting that Smith Barney issue checks to him. (*Id.* ¶ 42; Smith Barney Resp. ¶ 42.) Over a period of approximately one year, from October 2006 to October 2007, Smith Barney issued eight checks representing Plan funds, totaling $536,417.53, to DeWese. (Pl.'s Mot. ¶ 40; Smith Barney Resp. ¶¶ 40, 59; Pl.'s Mot. Ex. G (checks and deposit slips).)[3] All of the checks from the Plan were made payable to "Harris M. DeWese TTE." (Pl.'s Mot. ¶ 41; Smith Barney Resp. ¶ 41.) The checks were either deposited into the Compass bank account or into DeWese's personal account. (Pl.'s Mot. ¶ 50; DeWese Resp. ¶ 50.) Some of the funds were then used in the operation of Compass, and the rest were transferred to Hillsboro. (Pl.'s Mot. ¶ 50; DeWese Resp. ¶ 50.)[4] After the last check was issued to DeWese, there remained $3,804.41 in the Plan's Smith Barney account. (Pl.'s Mot. ¶ 61; Smith Barney Resp. ¶ 61.)

Hillsboro's financial troubles subsequently resulted in its collapse. (Pl.'s Mem. in Support of Pl.'s Mot. ("Pl.'s Mem.") 7; DeWese Dep. 95:9-11.) After December 2007, because there were insufficient funds in the Plan's Smith Barney account to make plaintiff's scheduled monthly payments those payments became irregular and were made only as DeWese periodically

---

[3]DeWese and Smith Barney both deny this statement of fact, but by way of explanation assert only that the checks were issued to DeWese as trustee and upon DeWese's instructions. Neither disputes the amount in question or the authenticity of the checks, and Smith Barney explicitly concedes the total amount (Smith Barney Resp. ¶¶ 40, 59).

[4]DeWese disputes plaintiff's factual assertions regarding the precise amounts and uses of Plan funds in general terms, stating simply that plaintiff's documentary evidence speaks for itself. (DeWese Resp. ¶¶ 53-58.) However, DeWese has offered no evidence as to the actual use of those funds, and concedes that the funds were either used to fund Compass or transferred to Hillsboro. (*Id.* ¶ 50.)

transferred sufficient funds to Smith Barney to make the payments. (Pl.'s Mot. ¶¶ 63, 65; Smith Barney Resp. ¶ 65.)

Plaintiff tried but was unable to obtain information from Smith Barney as to why his payments were not being made on time, because Smith Barney followed a policy of communicating only with the named account holder (DeWese) and refused to discuss details of the account with plaintiff. (Pl.'s Mot. ¶¶ 71-72.) DeWese eventually admitted to plaintiff that he had emptied the Plan account at Smith Barney and that the Plan was "broke." (Pl.'s Mot. Ex. E, Doc. SB0008 ("DeWese Email" to Pl., July 7, 2008).) DeWese claimed that he would restore the Plan's funds using fees he expected to earn in 2008. (Pl.'s Mot. Ex. C at 124 (email from DeWese to Pl., July 15, 2008).) After giving DeWese one year to replace the Plan funds, plaintiff initiated this litigation. (Pl.'s Mot. ¶ 82; Smith Barney Resp. ¶ 82.)

Plaintiff filed this civil action in September 2009 and, by consent of the parties, filed an amended complaint in November 2009. Defendants—including former defendant Bish, who has been dismissed as a defendant by consent of the parties—filed various motions to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(c), which I disposed of by order dated April 7, 2010, *Nagy v. De Wese*, 705 F. Supp. 2d 456 (E.D. Pa. 2010). Pursuant to that order, the claims that remain before the court are (a) plaintiff's claims in Count I for breach of fiduciary duty under ERISA against DeWese, Compass and Smith Barney under section 502(a)(2) of ERISA (b) plaintiff's claims in Count II for equitable relief based on unjust enrichment, under section 502(a)(3)(B) of ERISA, against DeWese and Compass, and (c) plaintiff's claim in Count III

against Smith Barney for breach of fiduciary duty to the Plan[5] under Pennsylvania law. *See Nagy*, 705 F. Supp. 2d at 470.

Plaintiff now seeks summary judgment on his breach-of-fiduciary-duty claims under ERISA against DeWese, Compass, and Smith Barney and, alternatively, under Pennsylvania law against Smith Barney. Smith Barney seeks summary judgment on plaintiff's ERISA and state-law claims against it.

## II.     Legal Standard

A motion for summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a party moving for summary judgment has met its initial burden, the nonmoving party may not rely merely on bare assertions, conclusory allegations, or suspicions, *see Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), but instead must present "specific facts showing that there is a *genuine issue for trial*," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added in *Matsushita*). "If the [nonmoving] party does not so respond, summary judgment should, if

---

[5]I previously held that plaintiff's state-law claims were preempted to the extent that he alleged breach of fiduciary duty to Plan participants, but not to the extent that he alleged breach of fiduciary duty to the Plan itself. *Nagy*, 705 F. Supp. 2d at 470.

appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

"Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996) (citation omitted). For elements on which the nonmoving party bears the burden of production, the party must show more than "[t]he mere existence of a scintilla of evidence," but instead must present concrete evidence supporting each essential element of its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322-23. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

When a court evaluates a motion for summary judgment, "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255. Furthermore, "[a]ll justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy*, 90 F.3d at 744. However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (citation omitted). In addition, the mere fact that parties have filed cross-motions for summary judgment "does not mean that the case will necessarily be resolved at the summary judgment stage" because "[e]ach party must still establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Atl. Used Auto Parts v. City of*

*Phila.*, 957 F. Supp. 622, 626 (E.D. Pa. 1997) (citation omitted).

### III.     Discussion

A.     *BREACH OF ERISA FIDUCIARY DUTY – COUNT I*[6]

Plaintiff asserts that DeWese and Smith Barney were each fiduciaries of the Plan under

ERISA, that they each breached their fiduciary duties to the Plan, and that Smith Barney is also

liable as a co-fiduciary for DeWese's actions.[7]

---

[6]Count II of plaintiff's amended complaint—as clarified by plaintiff in his response to DeWese and Compass's Rule 12(c) motion—requests equitable relief against DeWese and Compass under section 502(a)(3)(B) of ERISA, on the basis of unjust enrichment (Pl.'s Opp'n to DeWese/Compass Rule 12(c) Mot. 6), but plaintiff makes no mention of this theory of recovery in his motion for summary judgment except to say "of course Compass was unjustly enriched by DeWese's transgressions." (Pl.'s Mem. 20.) This may be because plaintiff is unable to adduce evidence of specific property or funds in the defendants' possession that belong to plaintiff, or any profits derived therefrom.

Money damages are not available under section 502(a)(3)(B) of ERISA; the "equitable relief" available under section 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), refers to "those categories of relief that were typically available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 215 (2002).

Plaintiff requests that DeWese and Compass "be ordered to pay restitution" to plaintiff and to the Plan. (1st Am. Compl. ¶ 38.) Restitution can be equitable or legal, and only equitable restitution is available under section 502(a)(3)(B). *Great-West*, 534 U.S. at 213-15. "Crucial to the question of whether restitution lies in equity is if the action seeks 'to restore to the plaintiff particular funds or property in the defendant's possession,' as opposed to seeking to impose personal liability on the defendant." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 235 (3d Cir. 2009) (quoting *Great-West*, 534 U.S. at 214), *cert. denied*, 130 S. Ct. 1546.

Because the issue is not argued by either plaintiff or defendants, I need not decide it at this stage; to the extent plaintiff intended to move for summary judgment on Count II, plaintiff's motion will be denied. However, as this claim would also require proof of a breach of duty, much of the reasoning set out in this opinion would be applicable to this claim as well.

[7]Plaintiff's complaint alleges that Compass, like DeWese, is a fiduciary of the Plan and breached its fiduciary duties by participating in the looting of the Plan, and plaintiff's motion for summary judgment requests judgment against Compass. (1st Am. Compl. ¶ 33-34; Pl.'s Mem. 24.) Plaintiff, however, presents no argument, nor points to any evidence, in support of his claim

Plaintiff brings these claims under section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), which allows plan participants to bring suit against plan fiduciaries for relief under section 409. Section 409 imposes personal liability on "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by [ERISA]." 29 U.S.C. § 1109(a). To support a claim for breach of fiduciary duty under sections 502(a)(2) and 409, plaintiff must prove that (a) each defendant was an ERISA fiduciary; (b) each defendant breached an ERISA-imposed duty; and (c) such breach caused a loss to the Plan. *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007).

Specific statutory duties imposed on ERISA fiduciaries include, as relevant to this case, duties of prudence, diligence and loyalty, and prohibitions against self-dealing or transactions with interested parties. *See* 29 U.S.C. §§ 1104(a), 1106(a)-(b). ERISA also imposes liability upon fiduciaries for the acts of other fiduciaries under certain circumstances. *See* 29 U.S.C. § 1105. "[T]he law of trusts often will inform, but will not necessarily determine the outcome of, an effort to interpret ERISA's fiduciary duties." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1995).

The mere fact that a person is a fiduciary because of conduct fitting the statutory definition in section 3(21)(A), 29 U.S.C. § 1002(21)(A), does not, however, necessarily mean that such person's actions in all spheres must be judged under applicable fiduciary standards of

---

against Compass in his motion for summary judgment. The Plan description submitted with plaintiff's motion for summary judgment lists Compass as administrator of the Plan (Pl.'s Mot. Ex. C at 49), but plaintiff neither argues nor introduces evidence that Compass remained a fiduciary during the relevant time period; nor does plaintiff set forth the theory or theories under which he would have the court grant summary judgment against Compass and the evidence to support them.

The court will not make plaintiff's argument for him. Summary judgment against Compass will be denied as to both Counts I and II.

prudence and loyalty. Rather, such a person is a fiduciary only "to the extent" engaged in fiduciary conduct as defined in the statute. 29 U.S.C. § 1002(21)(A); *see also* 29 C.F.R. § 2509.75-8, Question 16 ("The personal liability of a fiduciary who is not a named fiduciary is generally limited to the fiduciary functions, which he or she performs with respect to the plan.").

Thus, "[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). "[F]iduciary status under § 1002(21)(A) is not an all or nothing concept" and a court "must ask whether a person is a fiduciary with respect to the particular activity in question." *Srein v. Frankford Trust Co.*, 323 F.3d 214, 221 (3d Cir. 2003) (quoting *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994)).

I apply these standards to DeWese and Smith Barney in turn.

### 1. DeWese

DeWese concedes that he succeeded Nagy as the Plan's administrator, and does not seek to argue that he was not a fiduciary with respect to the plan with general responsibility for its administration, or that he did not act in that capacity when engaged in the acts that are the subject of plaintiff's complaint. (DeWese Resp. ¶ 10; DeWese/Compass Br. in Opp'n to Pl.'s Mot. ("DeWese Br.") 3-4.) There is also no question that the Plan suffered losses as a result of DeWese's actions. (Pl.'s Mot. ¶¶ 65, 82.) Accordingly, I need only address whether DeWese breached his fiduciary duties.

By DeWese's admission, the funds withdrawn from the Plan's account at Smith Barney

were used for (a) Compass expenses and (b) investments in Hillsboro. (DeWese Resp. ¶ 50; DeWese Email) Each of such uses constitutes a breach of DeWese's fiduciary duties to the Plan.

### a. Compass Expenses

By using Plan assets to fund the operation of Compass, DeWese clearly breached his fiduciary duty to the Plan. Not only are fiduciaries charged with ensuring that assets of a plan are used "solely in the interest of the participants and beneficiaries" thereof, 29 U.S.C. § 1104(a)(1), they also are subject to a plain bar on the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D). ERISA defines a "party in interest" with respect to a plan to include "an employer any of whose employees are covered by such plan" and a corporation of which 50% or more of the voting stock is owned by, *inter alia*, a fiduciary of the plan. 29 U.S.C. § 1002(14)(C), (G)(i). The undisputed evidence shows that Compass was at all relevant times a "party in interest" to the Plan because its employees were covered by the Plan and DeWese owned more than 50% of its voting stock. (Pl.'s Mot. ¶¶ 3, 16.)

Moreover, the assets of a plan "shall never inure to the benefit of any employer" other than in specific enumerated circumstances not applicable here. 29 U.S.C. § 1103(c)(1). DeWese has made no attempt to justify the use of Plan funds to operate Compass, so there is no genuine issue of material fact as to whether the use of Plan assets to finance the operation of Compass constitutes a breach of fiduciary duty.

### b. Hillsboro Loans

DeWese claims that all of the Plan funds that were withdrawn from the Smith Barney account, apart from the funds used to finance Compass, were transferred to Hillsboro and that the money was not used for his personal benefit. (DeWese Resp. ¶ 50.) DeWese characterizes the

loans to Hillsboro of Plan funds as an "investment" on which he hoped to earn returns for the benefit of the Plan. (DeWese Br. 4.) However, a rational trier of fact could not fail to find that DeWese breached his fiduciary duties as trustee and administrator of the Plan by transferring almost all of the Plan's assets to Hillsboro.

DeWese's transfer of Plan assets to a troubled company in which DeWese owned at least 40% of the equity and which was unable to obtain bank financing, appears on its face to constitute a clear breach of his duty to act "solely in the interest of the participants and beneficiaries" of the Plan, 29 U.S.C. § 1104(1), and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," 29 U.S.C. § 1104(a)(1)(B). The appearance of impropriety is compounded by the fact that DeWese offers no evidence that the loans were under terms favorable enough to justify the risk of lending without security to a troubled company; in fact DeWese offers no evidence, testimonial or documentary, of any terms of the loans to Hillsboro. Although DeWese claims there were "standard promissory notes" evidencing "some" of the loans, he is not currently in possession of any such notes. (Pl.'s Mot. ¶ 39; DeWese Dep. 39:13-40:16.) No documentation of any sort of the loans to Hillsboro is included in the record.

DeWese's email correspondence informing plaintiff that the Plan's account had been exhausted is also damning. In the email DeWese states: "[w]e used the funds to finance the firm while I wasn't working. There simply wasn't enough revenue to finance Compass and the demands of Hillsboro printing." (DeWese Email.) These statements are significant evidence that DeWese did not use the Plan's funds "solely in the interest of [its] participants and

beneficiaries," 29 U.S.C. § 1104(1).

Moreover, ERISA plan fiduciaries are required to "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(C).[8]  Virtually all of the Plan's assets were liquidated and the proceeds—other than those improperly used to operate Compass as discussed above—lent to Hillsboro.

No trier of fact could rationally conclude that it was "clearly prudent" to lend virtually all of the Plan's funds to Hillsboro, which could not obtain bank financing and in which DeWese owned a substantial share; nor could a rational trier of fact find that he acted "solely in the interest of the participants and beneficiaries" of the Plan, 29 U.S.C. § 1104(a)(1), and exercised "the care, skill, prudence, and diligence" required by section 404, 29 U.S.C. § 1104(a)(1)(B).

DeWese may not "rely merely on bare assertions, conclusory allegations, or suspicions" *Fireman's*, 676 F.2d at 969, to rebut the substantial evidence plaintiff has presented in support of his claim for breach of fiduciary duty under ERISA.  Because DeWese offers no evidence in support of his contention that he prudently invested the Plan's funds in Hillsboro, nor that he did so for the benefit of the Plan, plaintiff's evidence entitles him to summary judgment on Count I against DeWese for breach of fiduciary duty.

### c.      Damages

Plaintiff has requested $561,900 as personal damages, which represents the cost of replacing the annuity he and his wife no longer enjoy as a result of the Plan's losses. (Pl.'s Mot.

---

[8]Although plaintiff has not explicitly argued improper lack of diversification under section 404(a)(1)(C), it is relevant to the discussion of whether DeWese has met the standard of section 404.

¶ 83.) Plaintiff is not entitled to individual damages on this claim, however. Although 29 U.S.C. § 1132(a)(2) entitles plan participants and beneficiaries to bring suit for breach of fiduciary duty, such actions, "are derivative in nature" and "[c]onsequently, the plan takes legal title to any recovery, which then inures to the benefit of its participants and beneficiaries." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007).

Thus the relevant figure is the loss to the Plan itself, not to plaintiff. Plaintiff's expert witness calculates the damages to the Plan as $657,696.44 as of June 1, 2010. (Pl.'s Mot. ¶ 84.) Plaintiff's expert applies a 6% interest rate to each disbursement from the Plan, from the date of disbursement until June 1, 2010, to arrive at this figure. (Pl.'s Mot. Ex. K at 1 (Expert Report Supplement, Apr. 30, 2010).)

None of the defendants has offered evidence or argument to rebut plaintiff's expert witness on the question of damages. The total amount of the disbursements from the Plan account also does not appear to be in dispute. However, plaintiff's expert witness report does not explain the basis for assuming a 6% return on the misappropriated Plan funds, and at this stage I cannot say that no genuine issue remains as to the amount of damages to which the Plan is entitled.[9]

---

[9]The Third Circuit has expressed support for measuring damages in cases of fiduciary breach under ERISA by comparing the performance of the plan's investments to the performance of hypothetical prudent alternative investments. *See Graden*, 496 F.3d at 301 (stating in *dicta* that "the measure of damages is the amount that affected accounts would have earned if prudently invested"); *see also Moore v. Comcast Corp.*, 268 F.R.D. 530, 534 (E.D. Pa. 2010) ("In *Graden* . . . the [Third Circuit] adopted the alternative investment approach for the measurement of damages in cases for fiduciary breaches under ERISA."). *Graden* approvingly quoted Second Circuit precedent stating that "the district court should presume that the funds would have been treated like other funds being invested during the same period in proper transactions," and that "[w]here several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these." *Id.* (quoting

## 2.     Smith Barney

Plaintiff and Smith Barney, through their competing motions for summary judgment and responses thereto, vigorously dispute whether Smith Barney was a fiduciary with respect to the Plan, whether Smith Barney was acting as a fiduciary when it engaged in the conduct relevant to this cause of action and, if so, whether Smith Barney violated its fiduciary duties.

For the reasons more fully explained below, as to plaintiff's claims against Smith Barney under Count I, plaintiff's motion for summary judgment will be denied and Smith Barney's motion for summary judgment will be granted in part and denied in part. Plaintiff has failed to present evidence that Smith Barney was a fiduciary with respect to the conduct subject to complaint; thus, Smith Barney could not have directly violated any fiduciary duties with respect to the Plan, and Smith Barney is entitled to summary judgment on plaintiff's claims to that effect under Count I. Based on the undisputed evidence, however, a reasonable factfinder could not fail to find that Smith Barney was a fiduciary with respect to the Plan because it offered investment advice for a fee. There is, therefore, a genuine issue of material fact as to whether Smith Barney may be liable as a co-fiduciary under section 405 of ERISA, and neither Smith Barney nor plaintiff is entitled to summary judgment on that claim in Count I.

### a.     Smith Barney's Fiduciary Status

Plaintiff asserts that Smith Barney meets the statutory definition of a "fiduciary" because it (a) exercised authority or control over Plan assets and (b) provided investment advice to the Plan for a fee. (Pl.'s Mem. 17.) Fiduciary status can be conferred, *inter alia*, "to the extent" one

---

*Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985)). *Graden* involved damages to individual investment accounts, but there is no reason to believe the "alternative investment" measure of damages is less applicable to defined-benefit plans like the one at issue here.

(a) "exercises any authority or control respecting management or disposition of [a plan's] assets" or (b) "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so." 29 U.S.C. § 1002(21)(A)(i)-(ii). Plaintiff claims Smith Barney meets each of these standards.

Because a court "must ask whether a person is a fiduciary with respect to the particular activity in question," *Srein*, 323 F.3d at 221, I examine Smith Barney's actions under both standards to determine whether and to what extent Smith Barney was a fiduciary.

### i. Authority or Control Over Plan Assets

Plaintiff contends that Smith Barney exercised authority and control over the Plan's assets, and thus acted as a fiduciary, by (i) managing the Plan's investment portfolio in the Smith Barney account by purchasing and selling investments, (ii) paying benefits from the Plan's account, and (iii) issuing checks to DeWese from the Plan's account to finance the Hillsboro loans. (Pl.'s Mot.16-17.) Plaintiff argues that, under Third Circuit authority beginning with *Board of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Funds v. Wettlin Associates., Inc.*, 237 F.3d 270 (3d Cir. 2001), Smith Barney did not need to have any discretion in the performance of these functions to be deemed a fiduciary. (Pl.'s Mem. 16-17.) While plaintiff is correct on that point, plaintiff reads the authority on which that proposition rests too liberally with respect to the transfers of Plan funds that form the basis for plaintiff's claims.

A person who has authority or control respecting management of a plan, or authority or responsibility in the administration of a plan, is a fiduciary only if the authority, control, or responsibility is *discretionary*. *See* 29 U.S.C. § 1002(21)(A)(i), (iii). Discretion is unnecessary,

17

however, to confer fiduciary status on those who have "authority or control respecting management or disposition of [a plan's] *assets*." *See* 29 U.S.C. § 1002(21)(A)(i) (emphasis added); *see also Wettlin*, 237 F.3d at 273 ("[D]iscretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word 'discretionary' is conspicuously absent when the text refers to assets."). It is authority or control over assets with which plaintiff charges Smith Barney in this case.

Nevertheless, mere custody or possession of plan assets, such as when a bank "does no more than receive deposits from a benefit fund on which the fund can draw checks," does not constitute an exercise of "authority or control" or confer fiduciary status. *In re Mushroom Transp. Co.*, 382 F.3d 325, 346-47 (3d Cir. 2004) (citing *Wettlin*, 237 F.3d at 275). The Third Circuit's reasoning in *Wettlin* and subsequent cases sheds light on what, beyond mere custody, is required to find that a person exercises "authority or control" over plan assets.

In *Wettlin*, Wettlin Associates, Inc. was hired by a pension plan to provide administrative services. 237 F.3d at 271. Wettlin payed itself money from the plan's account and was sued for breach of fiduciary duty. Wettlin argued that it could not be a fiduciary because it exercised no discretion and performed only "ministerial" functions. *Id.* at 272. On appeal from dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Third Circuit held that discretion was not required for a person to be a fiduciary if such person exercised "authority or control respecting management or disposition of [a plan's] assets." *Id.* at 275. Unhelpfully to plaintiff, the Third Circuit contrasted Wettlin's responsibilities that were "purely ministerial and . . . *specifically subject to the direction of the trustees*" with its responsibility to collect contributions and write checks on the plan's account, which were "quite general in scope." *Id.*

(emphasis added). Wettlin's contract required it to "receive request[s] for benefits from employees and take appropriate action thereon." *Id.* Of course, Wettlin paid itself with plan funds without any direction from the plan. *Id.* at 272.

In a subsequent case interpreting this provision, *Srein v. Frankford Trust Co.*, two pension plans were sold overlapping participation interests in the same insurance policy; Frankford Trust served as trustee to both plans and held the participation agreements in its vault. *Srein*, 323 F.3d at 218. Frankford received the proceeds of the agreement and credited them to the account of one of the plans, unaware that the second plan had been sold a competing interest in the same policy. *Id.* at 219.

The Third Circuit, while noting that discretion is not necessary to exercise authority or control over plan assets, concluded that Frankford Trust "exercised *undirected* 'authority and control' over plaintiffs' [assets] and therefore functioned as a fiduciary." *Id.* at 221-22 (emphasis added). The Third Circuit distinguished the case from decisions in other circuits in which "the plaintiff attempted to state a claim against the trustee bank for actions taken (or not taken) clearly at the direction of another," calling the plaintiff's reliance on those cases "misplaced." *Id.* at 222. The decision also emphasized that Frankford Trust was not directed to take the various actions that led to the payment of the policy proceeds to one plan and not the other, including placement of the agreements in its vault without cross-referencing one to the other, the assignment of random numbers to the agreements, and the payment of proceeds to one of the plans and not the other. *Id.* at 221.

The Third Circuit further developed this line of reasoning in *In re Mushroom Transportation Co.* In that case, a bank held plan assets pursuant to a bankruptcy-related

stipulation that required the bank to satisfy debts owed to itself and then pay the remainder to an escrow agent. *Mushroom*, 382 F.3d at 332. The Third Circuit, while acknowledging *Wettlin's* holding that a person who exercises authority or control over plan assets is a fiduciary regardless of whether such person exercises discretion, agreed with the district court that the bank was not a fiduciary under those circumstances. The Third Circuit also agreed that the escrow agent was not a fiduciary, noting that the funds "were to be paid to the trustee on demand" and that the escrow agent "had [no] legal right or discretion to dispose of [the] escrowed funds." *Id.* at 347.

The Third Circuit's approach in these cases suggests that merely having the practical ability to dispose of plan funds, without any authority to do so absent explicit direction from the plan's trustee, does not constitute "exercis[ing] authority or control respecting management or disposition of [a plan's] assets," 29 U.S.C. § 1002(21)(A)(i). Although ERISA may require less than discretion to find that a person exercises authority or control over plan assets, I conclude that Smith Barney's transfers of Plan assets pursuant to explicit instructions from the plan's trustee were not fiduciary conduct.

The issue is not entirely settled, but cases from other circuits dealing with non-discretionary authority or control over plan assets buttress this conclusion by generally emphasizing the unilateral, undirected nature of the acts complained of. *See*, *e.g.*, *Erickson v. ING Life Ins. & Annuity Co.*, No. 1:09-CV-00204-EJL, 2010 U.S. Dist. LEXIS 74231, at *21-22 (D. Idaho July 22, 2010) (affirming that authority or control over plan assets does not require discretion, but holding that a third-party administrator "exercised only mere possession or custody over the plan assets" when it "disposed of plan funds at the express direction of the [p]lan's trustees"); *Briscoe v. Fine*, 444 F.3d 478, 492 (6th Cir. 2006) ("Because fiduciary status

as to plan assets does not turn on the exercise of discretion or the existence of discretionary authority . . . the [a]greement does not alter the fact that [defendant] acted as a signatory and *unilaterally* disposed of the remaining funds." (emphasis added) (citations omitted)); *Chao v. Day*, 436 F.3d 234, 237-38 (D.C. Cir. 2006) (emphasizing that the lack of a discretion requirement "does not . . . extend fiduciary status to every person who exercises 'mere possession, or custody' over [a plan's] assets" and that the defendant "was a broker who solicited, accepted, and then pilfered the plans' assets"); *Chao v. Constable*, No. 04-1002, 2006 U.S. Dist. LEXIS 91539, at *13 (W.D. Pa. Dec. 19, 2006) ("Under ERISA, a person may become a fiduciary if she exercises 'undirected authority and control' over plan assets"). *But see F.W. Webb Co. v. State St. Bank & Trust Co.*, 09 Civ. 1241, 2010 U.S. Dist. LEXIS 82759, at *15-16 (S.D.N.Y. Aug. 12, 2010) ("So long as a person possesses 'authority or control' over plan assets, he is a fiduciary, even if he simply handles the assets according to instructions that others give him" (citing *Chao v. Day*, 436 F.3d at 236)).

With respect to the management of the Plan's assets in the Smith Barney account, the evidence presented is contradictory as to whether Smith Barney exercised authority or control. According to DeWese's deposition testimony, Bish had "carte blanche" to choose investments for the Plan. (DeWese Dep. 14:24-15:5.) According to Bish's deposition testimony, he had no authority to execute any trades without DeWese's authorization and could only recommend transactions. (Smith Barney Mot. Ex. E ("Bish Dep.") at 207:17-24.) DeWese claims that he played no role in deciding which investments to liquidate to finance his withdrawals. (DeWese Dep. 30:6-8.) Bish claims otherwise. (Bish Dep. 40:6, 144:22-145:5.) Given the conflicting evidence in the record, a reasonable finder of fact could conclude that Smith Barney exercised

authority or control over the Plan's assets by determining the composition of the Plan's holdings in the Smith Barney account, or that it did not.

Plaintiff has provided no evidence, however, that Smith Barney's authority or control extended to transfers of the Plan's funds out of the Smith Barney account. To the contrary, Smith Barney paid plaintiff's monthly benefit pursuant to explicit written instructions from DeWese as the Plan's trustee and issued the checks that are at the heart of this dispute pursuant to DeWese's instructions as well. (Pl.'s Mot. ¶¶ 23, 42.)

Plaintiff argues that Smith Barney's power to transfer Plan funds was not limited to following the instructions of the trustee, relying on deposition testimony of Meenu Gill ("Gill")—Smith Barney's designated Rule 30(b)(6) witness—in which Gill stated that Smith Barney could have refused to write checks to DeWese if they had known he would convert the funds to his own use, (Pl.'s Mem. in Reply to Smith Barney Resp. Ex. F ("Gill Dep.") at 68:14-69:9). (Pl.'s Mem. in Reply to Smith Barney Resp. 2-3.) However, the mere practical ability to act against an account holder's instructions to prevent fraud cannot constitute authority or control over plan assets; otherwise, any bank holding plan funds would become a fiduciary by virtue of its ability to place restrictions on an account in cases of potential fraud.

Plaintiff presents no evidence that Smith Barney made any other transfers of Plan assets or had authority to do so without specific instructions from DeWese. Therefore, although plaintiff has raised a genuine issue as to whether Smith Barney exercised "authority or control" over the Plan's assets within the Smith Barney account, plaintiff has failed to provide evidence that Smith Barney's fiduciary responsibilities extended beyond the management of the investments within that account.

*ii. Investment Advice*

Smith Barney contends that it did not provide investment advice for a fee within the meaning of ERISA and the relevant Department of Labor regulation. Smith Barney devotes its argument almost exclusively to disputing whether it provided investment advice with respect to the liquidation of the Plan's assets and investment of the resulting funds in Hillsboro, and Smith Barney correctly argues that plaintiff has not introduced evidence that Smith Barney provided investment advice for a fee within the meaning of ERISA with respect to those transactions. However, the uncontested evidence shows that Smith Barney provided investment advice for a fee with respect to the composition of the Plan's holdings in the Smith Barney account, and to that extent functioned as an ERISA fiduciary.

A person is a fiduciary under ERISA to the extent that such person "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so." 29 U.S.C. § 1002(21)(A)(ii). The meaning of this provision is further clarified by the Department of Labor's associated regulation under which, as relevant to the facts of this case, a person is deemed to be providing investment advice to the extent that such person is "(1) providing individualized investment advice; (2) given pursuant to a mutual understanding; (3) on a regular basis; (4) that serves as a primary basis for investment decisions with respect to plan assets; (5) pertains to the value of the property or consists of recommendations as to the advisability of investing in certain property; and (6) is rendered for a fee." *Goldenberg v. Indel*, *Inc.*, No. 09-5202, 2010 U.S. Dist. LEXIS 97599, at *6-7 (D.N.J. Sept. 17, 2010); *see also* 29 C.F.R. § 2510.3-21(c)(1).

Smith Barney admits that its employee Bish, who Smith Barney describes as the

23

"financial advisor" assigned to the Plan's account, recommended securities to DeWese for the Plan to buy and sell, and that DeWese always accepted Bish's recommendations. (Smith Barney's Statement of Undisputed Facts ¶¶ 8, 14; Smith Barney Resp. ¶¶ 26, 29-31.) Gill testified on behalf of Smith Barney that both Smith Barney and its financial advisors such as Bish earn fees in connection with rendering investment advice to clients. (Gill Dep. 33:2-34:2.) Thus no reasonable factfinder could find that Smith Barney did not regularly provide individualized investment advice consisting of recommendations as to the advisability of investing in certain property.

Smith Barney questions whether plaintiff has provided evidence that any investment advice was provided pursuant to a "mutual understanding" that such advice would serve as "a primary basis for investment decisions." (Smith Barney Mot. 17-18.) Such a mutual understanding need not be written, however, 29 C.F.R. 2510.3-21(c)(1)(ii)(B), and Gill testified at his deposition that "the financial advisor's responsibility is to render investment advice to the client," which is done "through client meetings, client interactions, phone conversations, getting to know the client," (Gill Dep. 33:6-11.) As noted above, Smith Barney concedes that DeWese always accepted Bish's recommendations. Given this evidence, no reasonable factfinder could dispute that Smith Barney provided investment advice to the Plan pursuant to a mutual understanding that it would serve as a primary basis for investment decisions.

However, plaintiff presents no evidence to suggest that Smith Barney provided any investment advice with respect to the withdrawal of the Plan's funds by DeWese or their subsequent use; all of the evidence presented with respect to this question suggests otherwise. (*See*, *e.g*., Bish Dep. 27:16-28:1, 31:6-8; DeWese Dep. 17:25-18:9.) Therefore, no reasonable

factfinder could find that Smith Barney provided investment advice with respect to the withdrawal of Plan funds and their investment in Hillsboro.

In light of the above, there is no genuine issue of material fact as to whether Smith Barney was a fiduciary under section 29 U.S.C. § 1002(21)(A)(ii). With respect to the provision of investment advice regarding the structuring of the Plan's portfolio in the Smith Barney account, Smith Barney acted as a fiduciary; with respect to the transactions subject to complaint in this case, however, Smith Barney did not act as a fiduciary.

### b.    Breach of Fiduciary Duty

Having established the scope of Smith Barney's potential fiduciary relationship with the Plan, I turn to the question of whether Smith Barney breached its fiduciary duties to the Plan.

Smith Barney acted as a fiduciary with respect to the Plan by providing investment advice on structuring the Plan's portfolio, and may have acted as a fiduciary by selecting investments within the Plan's account. However, plaintiff makes no allegation against Smith Barney of impropriety in the execution of these functions.

Plaintiff does not claim that Smith Barney should have, in the exercise of due prudence, selected different investments for the Plan, or provided different advice on which assets to hold. Plaintiff's complaint and motion for summary judgment instead allege that Smith Barney acted improperly in transferring the Plan's funds to DeWese and failing to take any action to protect those funds from misappropriation by DeWese. As discussed above, to the extent that Smith Barney was—or may have been—a fiduciary of the Plan, these actions were not taken in that capacity. Therefore, such actions cannot constitute direct violations of Smith Barney's fiduciary duties under ERISA.

Plaintiff also asserts that Smith Barney had a duty to disclose to him that DeWese was withdrawing the Plan's funds. The authority on which plaintiff relies does not, however, support his desired result.

To establish a breach of fiduciary duty through misrepresentation or omission, a plaintiff must demonstrate that "(1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure." *In re Unisys*, 579 F.3d at 228 (internal quotations omitted). The crucial element here is the first: Smith Barney must have been acting in a fiduciary capacity.

Smith Barney maintained a policy of not communicating with plan participants, and did not communicate with plaintiff other than in reply to plaintiff's requests for information after the Plan's account had been depleted; those communications were solely to inform plaintiff that Smith Barney could not discuss the Plan's account with him. (Pl.'s Mot. ¶¶ 71-73.) Smith Barney was not the Plan's administrator with statutory duties to provide information to participants, nor had it assumed any role involving communication with Plan participants.

Plaintiff points to no authority for the proposition that a fiduciary can be liable for breach of fiduciary duty for failure to disclose material facts to parties with whom such fiduciary never communicated about the plan. Moreover, although the Supreme Court has stated that "fiduciary duty to disclose is not necessarily coextensive with fiduciary responsibility for the subject matter of the disclosure," *Pegram*, 530 U.S. at 227 n.8, a fiduciary still must be acting as a fiduciary when communicating or failing to communicate. *See, e.g.*, *In re Unisys*, 579 F.3d at 228, 230

(requiring as an element of a misrepresentation or omission claim under ERISA that the defendant was acting in a fiduciary capacity and finding the requirement satisfied because "[a] plan administrator . . . acts as a fiduciary when explaining plan benefits and business decisions about plan benefits to its employees" (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir. 2000)); *Varity*, 516 U.S. at 505 ("Varity's statements about the security of benefits amounted to an act of plan administration.").

*Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc.*, 93 F.3d 1171 (3d Cir. 1996), the case plaintiff cites that most closely resembles the instant case, is unavailing. *Glaziers* involved an investment firm's failure to inform the plan about misdeeds that resulted in the resignation, under threat of dismissal, of its employee Lloyd—the individual investment advisor assigned to the plan's account—although such information would have been relevant to the plan's decision to move its assets to that employee's newly formed investment firm. *Id.* at 1175-77. The misdeeds were not directly related to the management of the plan's assets, but spoke to the integrity of the employee managing the Plan's funds on behalf of the investment firm. *See id*.

There is no such nexus between the subject of the disclosure that plaintiff claims he was owed in this case and the activities that give rise, or may give rise, to fiduciary status on the part of Smith Barney. There is no evidence that Smith Barney had any information which cast doubt on whether its own employees would provide honest investment advice to the Plan.

Even more importantly, *Newbridge* did not involve a failure to disclose information to plan participants to whom the investment firm never communicated about the plan; in *Newbridge*, the investment advisor failed to disclose information to the plan itself, with whom it

communicated about its fiduciary responsibilities and specifically about the individual investment advisor's departure (though omitting the reasons for it). *See Id.* at 1176-77 ("[The investment firm] did not inform the [f]unds of the circumstances surrounding Lloyd's departure . . . [and] informed the [f]unds only that Lloyd had resigned as [their] representative.").

Cases dealing with the duty of ERISA fiduciaries to disclose information to plan participants generally have involved misrepresentations or inadequate disclosure in the context of an extant communicative relationship. *See*, *e.g.*, *In re Unisys*, 579 F.3d at 229 (participant charging misrepresentations and inadequate disclosure by employer sponsor); *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 452-53 (3d Cir. 2003) (participant accusing HMO of failure to disclose material facts relating to insurance benefits); *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1296 (3d Cir. 1993) (participant alleging misrepresentations by the pension fund and employer sponsor). Plaintiff points to no caselaw in which such a relationship has been imposed between unfamiliar parties solely by ERISA.

To read *Newbridge* as implying a broader duty to disclose untethered to Smith Barney's actual fiduciary role would be inconsistent with the requirement set forth subsequently in *Pegram* and *In re Unisys* that the defendant must be acting as a fiduciary. If a limited-purpose fiduciary's duties of loyalty and prudence require it to communicate to plan participants information unrelated to its fiduciary duties, despite having never assumed any role involving communication with plan participants about the plan or their benefits, it would significantly undercut *Pegram*'s requirement that the acts subject to complaint be committed in a fiduciary capacity; indeed, most claims for breach of fiduciary duty that fail under *Pegram* could be converted into failure-to-disclose claims.

Because plaintiff challenges actions that were outside the scope of Smith Barney's fiduciary responsibilities, plaintiff cannot succeed in an action for direct breach of fiduciary duty.

### c.     Co-fiduciary Liability

In addition to liability for breaching the primary responsibilities imposed by ERISA, plaintiff asserts that Smith Barney is liable as a co-fiduciary under section 405 of ERISA. An ERISA fiduciary may be held liable for breaches of fiduciary duty by another fiduciary if "he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach" or "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a)(1), (3).[10]

Such fiduciary's participation, concealment, or failure to make reasonable remedial efforts must also cause a loss to the Plan. *See* 29 U.S.C. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan *resulting from* each such breach. . . .") (emphasis added); *see also Silverman v. Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998) (holding that 29 U.S.C. § 1109 requires a showing of causation for liability under 29 U.S.C. § 1105(a)(3)).

Plaintiff has established the fact of a breach by DeWese and that Smith Barney was an

---

[10]Section 405 also provides for liability when a fiduciary fails to comply with his primary fiduciary duties under section 404(a)(1) "in the administration of his specific responsibilities which give rise to his status as a fiduciary" and thereby enables a breach by a co-fiduciary. 29 U.S.C. § 1105(a)(2). Because plaintiff has failed to produce any evidence that Smith Barney breached its fiduciary responsibilities "in the administration of [its] specific responsibilities which give rise to [its] status as a fiduciary," this subsection is inapplicable here.

ERISA fiduciary to the Plan because it provided investment advice for a fee. For Smith Barney to be held liable as a co-fiduciary, plaintiff must also show that Smith Barney knew that DeWese breached his fiduciary duty and either (a) knowingly participated in or concealed DeWese's misappropriation of Plan funds or (b) failed to make reasonable efforts under the circumstances to remedy the breach. *See* 29 U.S.C. § 1105(a)(1), (3).

The principal question under either subsection (1) or (3) of section 405(a) is whether Smith Barney knew that DeWese was violating his fiduciary duties to the plan. On this question the evidence is inconclusive and a genuine issue of fact exists.

Plaintiff presents no evidence that Smith Barney was aware that DeWese used Plan funds for Compass expenses, but Smith Barney concedes that Bish knew from the first withdrawal that DeWese was channeling the Plan's money into a private investment, which he later learned was Hillsboro. (Smith Barney Resp. ¶ 43; *see also* Pl.'s Mot. Ex. D (Bish Dep.) at 173:9-14.) DeWese also testified at his deposition that he periodically communicated with Bish about how Hillsboro was doing, including the fact that from the outset it was doing poorly, but he would tell Bish that he thought they would "turn [it] around" and that he hoped it would be the last time he had to request money from the Plan account. (DeWese Dep. 19:15-17, 21:2-3, 21:13-15.) Plaintiff's evidence, if credited, shows that Smith Barney was aware that DeWese was investing more and more—and eventually invested substantially all—of the Plan's funds in a private printing company and that DeWese made repeated requests for more money for the same purpose until all the Plan's funds had been transferred to Hillsboro, in the hopes that Hillsboro would get out of financial trouble and become profitable.

The canceled checks (Pl.'s Mot. Ex. G), which plaintiff asserts put Smith Barney on

notice that the withdrawn Plan funds were being deposited in DeWese's personal account and Compass's account, are less clearly probative. Plaintiff does not explain why the canceled checks, even if they had been examined, would have informed Smith Barney of the illicit use of Plan funds, although the fact that some checks were endorsed in Compass's name might have raised some suspicions. Plaintiff also offers no evidence that the checks were examined by Smith Barney.[11]

Taken as a whole, however, plaintiff's evidence is sufficient to raise a genuine issue of material fact on the question whether Smith Barney had knowledge of DeWese's breach of fiduciary duty.

Despite the existence of a genuine issue of fact regarding whether Smith Barney knew of DeWese's breach of fiduciary duty, Smith Barney could succeed in its motion for summary judgment if plaintiff failed to offer evidence that Smith Barney participated in or concealed DeWese's breaches, or that it failed to take appropriate corrective action. *See* 29 U.S.C. § 1105(a)(1), (3). However, Smith Barney makes no claim that it took corrective action to remedy DeWese's misappropriation of Plan funds and the evidence presented shows it did not. (*See*, *e.g.*, Smith Barney Resp. ¶ 48; Gill Dep. 111:7-13 (responding that he was unaware of Smith Barney having exercised extreme caution in transferring the Plan's funds to DeWese).) At the least, this remains a genuine issue of fact. And, based on the evidence in the record, Smith Barney may also have participated in DeWese's misappropriation by transferring Plan funds to DeWese if Smith

---

[11]Smith Barney argues that it had no duty to inspect the canceled checks from which it would have found that DeWese was depositing Plan funds in his personal account and in Compass's account. (Smith Barney's Br. in Opp'n to Pl.'s Mot. 13-14.) The issue here is not, however, whether Smith Barney had a duty to inspect the checks but whether Smith Barney did in fact know that DeWese was improperly commingling personal and Plan funds.

Barney knew that he intended to misuse those funds.

Finally, to succeed in a claim for co-fiduciary liability plaintiff must show causation. Under section 405(a)(1), causation can be inferred so long as Smith Barney possessed the requisite knowledge of DeWese's misconduct when transferring the Plan's funds to DeWese, *see* 29 U.S.C. § 1105(a)(1) (a fiduciary must "participate[] knowingly in, or knowingly undertake[] to conceal" a co-fiduciary's improper act or omission, "knowing such act or omission is a breach"), because the funds could not have been misappropriated without first being transferred by Smith Barney. Under section 405(a)(3), Smith Barney must have possessed the requisite knowledge in time to avoid losses by taking reasonable corrective action. *See Silverman v. Mutual Benefit Life Ins. Co.*, 941 F. Supp. 1327, 1337 (E.D.N.Y. 1996) (concluding that "in order to prevail on a motion for summary judgment" under section 405(a)(3), "a plaintiff must also be able to identify a reasonable alternative course of action that the fiduciary might have taken that would have prevented a loss to the plan"). Plaintiff has offered sufficient evidence from which a reasonable factfinder could find that Smith Barney possessed the requisite knowledge of DeWese's breach of fiduciary duty when transferring the funds to DeWese, and while substantial Plan funds remained in the Smith Barney account, at which time "reasonable efforts under the circumstances," 29 U.S.C. § 1105(a)(3), could have protected at least those assets.

As I must draw all inferences in favor of the non-moving party, plaintiff has made a sufficient showing with respect to the elements discussed above to survive Smith Barney's motion for summary judgment as to this claim, though not to succeed on his own motion for summary judgment.

Smith Barney argues that, irrespective of what it knew, it cannot be liable as a co-fiduciary because section 405 requires a causal link between a person's fiduciary responsibilities and its co-fiduciary's breaches, relying on *Pension Fund-Mid Jersey Trucking Industry-Local 701 v. Omni Funding Grp.*, 731 F. Supp. 161, 176 (D.N.J. 1990). However, although *Pension Fund* can be read to support Smith Barney's position, given the statutory text at issue and an absence of contrary binding authority I am not persuaded by its reasoning.

In *Pension Fund*, a plan invested funds with an investment manager, which contracted with a bank to service mortgage loans issued by the investment manager and place unused plan funds in short-term investments. 731 F. Supp. at 171-72. The bank conceded that it was a fiduciary as to the short-term investments—over which it exercised discretion—but was found not to be a fiduciary with respect to the mortgage loans, which it merely serviced pursuant to the trustee's instructions. *Id.* at 174. The court held that the bank could not be liable as a co-fiduciary for breaches of fiduciary duty by the plan's investment manager and the plan's trustee with respect to the mortgage loans, because there was no "causal connection" between the activities that gave rise to the bank's limited fiduciary responsibilities—the short-term investments—and the fiduciary breaches with respect to the mortgage loans. *Id.* at 176; *see also*, *Silverman*, 941 F. Supp. at 1334 ("If [defendant] had undertaken to manage only a portion of the [p]lan's assets, then it might be immune from liability with respect to the assets that it did not manage [under section 405]" (distinguishing *Brandt v. Grounds*, 502 F. Supp. 598 (N.D. Ill.1980), and *Pension Fund*))

For this conclusion, *Pension Fund* relied on reasoning dealing with section 405(a)(2) in *Brandt*, 502 F. Supp. at 598-99. Section 405(a)(2) explicitly requires a failure "in the

administration of [one's] specific responsibilities which give rise to [one's] status as a fiduciary," 29 U.S.C. § 1105(a)(2). The court in *Pension Fund* saw no reason to limit the requirement of a causal connection to that subsection. *Pension Fund*, 731 F. Supp. at 176. However, to the extent that *Pension Fund* can be read to limit the potential co-fiduciary liability of a limited-purpose fiduciary solely to the scope of its primary fiduciary duties even under sections 405(a)(1) and 405(a)(3), the statutory text and regulations require a different result.

Section 405(a) requires only that a person be a fiduciary "with respect to the same *plan*" as a co-fiduciary, 29 U.S.C. § 1105(a) (emphasis added), not the same assets, and only section 405(a)(2) is limited to "the administration of [the] specific responsibilities which give rise to [a fiduciary's] status as a fiduciary," 29 U.S.C. § 1105(a)(2);[12] *see also Silverman v. Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 106 (2d Cir. 1998) ("Section 1105(a)(3) provides for extraordinarily broad liability for co-fiduciaries because it requires only that the defendant be a fiduciary of the same plan as the breaching fiduciary, not that they be fiduciaries with respect to the same assets. So a co-fiduciary . . . may be held liable for another trustee's breach with respect to assets over which the defendant co-fiduciary never exercised dominion or control.").

The Department of Labor regulation defining "investment advice" is also instructive. The regulation provides that a person who is a fiduciary by reason of giving investment advice within the meaning of the regulation is not a fiduciary with respect to assets regarding which it does not offer investment advice. 29 C.F.R. § 2510.3-21(c)(2). However, the regulation also provides that nothing in paragraph (c)(2) shall "exempt such person from the provisions of section 405(a) . . . concerning liability for fiduciary breaches by other fiduciaries with respect to any assets of the

---

[12]As stated, section 405(a)(2) is not at issue here.

plan. . . ." 29 C.F.R. § 2510.3-21(c)(2)(i). Thus the regulation contemplates a situation in which a person could be liable as a co-fiduciary under section 405(a) regarding assets that are entirely outside its own fiduciary responsibility.

Smith Barney's appeal to the reasoning in *Pension Fund* cannot overcome the clear meaning of the statute and regulation; its motion for summary judgment will be denied as to plaintiff's co-fiduciary liability claim.


B.    *State Law Breach of Fiduciary Duty – Count III*

I previously rejected Smith Barney's contention that plaintiff could not plead a state-law breach-of-fiduciary-duty claim as an alternative theory of recovery should Smith Barney be found not to be an ERISA fiduciary. *Nagy*, 705 F. Supp. 2d at 468-69. I noted, however, that "ERISA would preempt this claim if Smith Barney is an ERISA fiduciary because, in that event, the claim would conflict directly with an ERISA cause of action." *Id.* at 462 n.8.

Because Smith Barney did not act as a fiduciary with respect to the transfers of Plan funds to DeWese, but acted as a fiduciary by providing investment advice, the question arises whether the state-law breach-of-fiduciary-duty claim is preempted to the extent that it is based on the non-fiduciary conduct (*i.e.*, the transfers to DeWese). I conclude that the reasoning set forth in the prior order is applicable and the claim is preempted because it would conflict with an ERISA cause of action.

Unlike a professional malpractice claim against a person who also happens to serve in

some limited capacity as an ERISA fiduciary,[13] here the same facts that could give rise to co-fiduciary liability would form the basis for any state-law breach-of-fiduciary-duty claim. Without DeWese's violations of ERISA there would be no basis for plaintiff's state-law claim against Smith Barney. Such a claim would further require proof that Smith Barney knew that DeWese improperly used Plan funds.[14]

Thus, to allow plaintiff's state-law claim for breach of fiduciary duty to proceed despite finding that Smith Barney is an ERISA fiduciary—even if solely with respect to Smith Barney's provision of investment advice—would impose a state-law legal standard on conduct that is clearly regulated by the provisions of ERISA. "Plaintiff would be seeking a state law remedy for the violation of a right 'expressly guaranteed' by 29 U.S.C. § 1109(a) and 'exclusively enforced by § 502(a).'" *Nagy*, 705 F. Supp. 2d at 463 n.8 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 145 (1990)).

Accordingly, plaintiff's state-law claim for breach of fiduciary duty against Smith Barney is preempted, and I will grant Smith Barney's motion for summary judgment as to that claim.

**IV.    Conclusion**

Plaintiff's motion for summary judgment will be granted against DeWese as to plaintiff's

---

[13]"ERISA preemption does not generally preempt professional malpractice actions . . . ." *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 148 (3d Cir. 2007).

[14]The Pennsylvania Uniform Trusts Act states that unless a person "assisting or dealing with a trustee has actual knowledge that the trustee is committing a breach of trust or has knowledge of such facts that the trustee's conduct amounts to bad faith," that person is protected from liability. 20 Pa. Cons. Stat. Ann. § 7790.2(A.1). Even if the standard were constructive knowledge, the reasoning that follows would apply.

claim for breach of fiduciary duty in Count I, as to liability only; plaintiff's motion for summary judgment will be denied as to the amount of damages. To the extent plaintiff may have intended to move for summary judgment on Count II against DeWese, plaintiff's motion will be denied as to that count because plaintiff has failed to argue or provide evidence in support thereof.

Plaintiff's motion for summary judgment will be denied as to Counts I and II against Compass, because plaintiff failed to argue any claim against Compass or point to evidence in support thereof.

Smith Barney's motion for summary judgment will be granted as to plaintiff's claims for direct breach of fiduciary duty in Count I because plaintiff has produced no evidence that Smith Barney acted as a fiduciary with respect to the conduct complained of, and denied as to plaintiff's claim in Count I that Smith Barney is liable as a co-fiduciary under section 405 because genuine issues of fact remain as to that claim. Smith Barney's motion for summary judgment on plaintiff's state law claim in Count III will be granted because Smith Barney was a fiduciary with respect to the Plan and the claims are therefore preempted. Accordingly, plaintiff's motion for summary judgment will be denied with respect to all of his claims against Smith Barney.